# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBORAH A. GREEN,  )<br>  )<br>      Plaintiff,  )<br>  )<br>v.  )<br>  )<br>MICHAEL J. ASTRUE,  )<br>Commissioner of the Social  )<br>Security Administration,  )<br>  )<br>      Defendant.  ) | Case No. CIV-11-245-SPS |

## OPINION AND ORDER

The claimant Deborah A. Green requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born September 23, 1960 and was fifty years old at the time of the administrative hearing. (Tr. 34). She completed the twelfth grade, and has worked as a nurse's aide and a respiratory therapist. (Tr. 51-52, 143). The claimant alleged that she has been unable to work since July 22, 2007, due to back surgery, high blood pressure, depression, and anxiety. (Tr. 138).

## Procedural History

On January 16, 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Kim D. Parrish conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 13, 2010. (Tr. 15-25). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she could only occasionally bend forward at the waist, bend at the knees to come to rest on the knees, and bend downward by bending legs and spine. The ALJ further limited the claimant to working in relative isolation with limited contact with peers and supervisors and the general public. (Tr. 19). The ALJ

concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the regional and national economies, *e. g.*, file clerk, bench assembler, and polisher. (Tr. 24).

**Review**

The claimant contends that the ALJ erred (i) by failing to properly evaluate the medical evidence, specifically the opinion of her surgeon, Dr. James Alvis; (ii) by failing to properly account for her obesity; and (iii) by failing to perform a proper credibility analysis. The Court finds the ALJ *did* fail to properly consider Dr. Alvis's opinion, and the decision of the Commissioner must therefore be reversed.

The relevant medical evidence shows that the claimant had the severe impairments of status post L5-S1 fusion, depression, and anxiety. (Tr. 17). The claimant underwent a posterior lumbar interbody fusion of the L5-S1 on July 26, 2007, to treat her diskogenic low back pain. (Tr. 183-185). She continued to complain of low back pain, and was regularly prescribed Oxycontin and Percocet. (Tr. 262-263, 267-292, 512-554). Dr. Alvis, claimant's surgeon, continued to follow up with her, and also completed several "Certification[s] of Health Care Provider," opining that the claimant was temporarily disabled following her surgery—on September 21, 2007; August 10, 2007; October 23, 2007; January 10, 2008; and April 7, 2008. (Tr. 311, 314, 319, 322, 556). On the April 2008 form, Dr. Alvis stated that the claimant had been continuously disabled from June 15, 2007, and would remain so at least through July 27, 2008, and that it was undetermined when the claimant may return to work. (Tr. 556). On June 3, 2008, a consultative examiner found the claimant had a full range of motion on her cervical

spine, but a more limited range of motion, or deficit, to the lumbar spine. The examiner noted, however, that the claimant demonstrated better range of motion picking up her purse than during the actual testing. (Tr. 382).

The claimant received treatment for her mental impairments at the Mental Health and Substance Abuse Center of Southern Oklahoma. At the initial request for services in 2007, she was assigned a Global Assessment of Functioning (GAF) score of 50. (Tr. 334, 337). A consultative examiner found that the claimant had social discomfort and a persistent nervous giggle which likely affected her ability to adjust into occupational and social settings, but did appear capable of doing so. (Tr. 373). Mental health treatment records from 2008-2009 indicate that the claimant's GAF score had increased to 56, with a GAF of 55 being the highest level in the past year. (Tr. 562). She reported bouts of anxiety, but no problems with her medications. (Tr. 588, 592).

At the administrative hearing, the claimant testified that she struggles with back and leg pain, experiences numbness in her legs daily, and pain radiates down her right leg down to her toes. (Tr. 35-36). In response to questioning, the claimant stated that she could stand ten minutes at the most, that she could walk one block, and that she could lift a six-pound gallon of milk. (Tr. 37). She stated that she has to have help around her house, and especially with getting in and out of the shower. (Tr. 38-39, 48). As to her daily activities, the claimant stated that she can shower without assistance, that she does light cooking and can put clothes in the washing machine but "can't do the dryer," and that she either watches television or reads books. (Tr. 39). She further testified that she uses a TENS unit for pain approximately three times a week, and receives pain

management treatment, but believed that her back condition had not significantly improved since her surgery in 2007. (Tr. 42-43, 45-49). She further stated that she takes one to two naps daily, each lasting between one and two hours. (Tr. 50).

In his written decision, the ALJ summarized the testimony of the claimant and the medical record, including records from Dr. Alvis. The ALJ stated that Dr. Alvis reported the claimant did well post-operatively, further noting that "the record does not contain any opinions from treating or non-treating physicians indicating that the claimant is disabled or has limitations greater than those determined in this decision" (Tr. 21-22), but this was clearly incorrect; as discussed above, Dr. Alvis opined on numerous occasions that the claimant was at least temporarily totally disabled from June 15, 2007 through July 27, 2008.

Medical opinions from a treating physician such as Dr. Alvis are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinions are not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing all of the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527."), *quoting Watkins,* 350 F.3d at 1300. The applicable factors are: (i) the length of the treatment relationship and the frequency of examination;

(ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) any other factors that tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). And if the ALJ decides to reject a treating physician's opinions entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300.

The ALJ was not required to give controlling weight to Dr. Alvis's opinion that the claimant was temporarily totally disabled for over a year because such determinations are for the ALJ himself to make. *See, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). But the ALJ *was not* allowed to ignore the evidence that did not support his findings and *was* required to determine the proper weight to give this opinion by applying the factors in 20 C.F.R. § 404.1527. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527."), *quoting Watkins,* 350 F.3d at 1300. *See also Miller v.*

*Barnhart,* 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("The [ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner."); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). The ALJ neither performed the necessary analysis nor specified the weight he was assigning to Dr. Alvis's opinion that the claimant was disabled.

Because the ALJ failed to properly analyze the weight due Dr. Alvis's opinion, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such results in any adjustment to the claimant's mental RFC, the ALJ should re-determine what work, if any, she can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 18th day of September, 2012.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma